NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3386-14T2

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

KARLA FREEMAN,

 Defendant-Appellant.
_______________________________________________

 Submitted January 10, 2017 – Decided September 7, 2017

 Before Judges Espinosa and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Law Division, Mercer County,
 Indictment No. 04-02-0122.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Craig S. Leeds, Designated
 Counsel, on the brief).

 Angelo J. Onofri, Mercer County Prosecutor,
 attorney for respondent (Scott J. Gershman,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 Defendant Karla Freeman challenges the denial of her

petition for post-conviction relief (PCR), which raised various
claims of ineffective assistance of her trial and appellate

counsel. The PCR judge evaluated all of defendant's claims and

conducted a full evidentiary hearing before denying the

petition. For the reasons that follow, we affirm the order

denying relief, but remand for the limited purpose of correcting

the judgment of conviction to reflect a final charge of second-

degree robbery rather than first-degree robbery.

 I.

 In 2004, a grand jury sitting in Mercer County returned an

indictment charging defendant and co-defendant, Maurice Turner,

with first-degree murder, N.J.S.A. 2C:11-3(a)(1) (count one);

first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count two);

two counts of first-degree robbery, N.J.S.A. 2C:15-1 (counts

three and four); third-degree possession of a weapon for an

unlawful purpose, N.J.S.A. 2C:39-4(d) (count five); and fourth-

degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d)

(count six). Defendant was charged alone with fourth-degree

tampering with physical evidence, N.J.S.A. 2C:28-6(1) (count

seven).

 Defendant and Turner were tried to a jury in March 2006,

but a mistrial was declared before the jury deliberated.

Defendant's case was severed from Turner's and she was retried.

 2 A-3386-14T2
We repeat relevant facts from our 2010 opinion affirming her

conviction:

 This matter stems from an incident that
 occurred in the early morning hours of May 24,
 2003 that resulted in the death of William
 Goldware. . . .

 At 2:44 a.m., the Trenton Police
 Department received a 911 call for which
 police responded to defendant's home address.
 . . . Inside the house, the officers observed
 a flipped-over barstool and a blood stain on
 the wall. On the second floor, they found
 defendant sitting on a bed in the bedroom.
 The bedroom showed obvious signs of struggle,
 as there was an overturned ironing board and
 blood on the walls and dresser. Defendant was
 crying and talking on the phone. She was
 wearing a blood-stained nightgown, and one of
 the fingernails on her left hand was missing.
 The fingernail was found in another bedroom.

 Goldware was found lying in a puddle of
 blood on the bathroom floor. He was wearing
 boxer shorts, and he had twenty-four stab
 wounds, two of which were later described as
 fatal. . . .

 . . . .

 At headquarters, defendant executed a
 waiver of her Miranda[1] rights, and then
 described the evening's events . . . . She
 stated that while at Black Jack's, she saw
 Warren "Cisco" Littlejohn, whom she
 recognized. Cisco told her Goldware was
 interested in her, and she and Goldware
 exchanged phone numbers. Goldware later called
 her and asked if he could come over to her
 house. She said yes, and the two exchanged

1
 Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d
694 (1966).

 3 A-3386-14T2
several additional phone calls before Goldware
arrived. While upstairs with Goldware,
defendant heard a "screech," and an intruder
began beating both her and Goldware. The
intruder made demands for property, saying
"[w]here the fuck it at?". When defendant
responded with confusion, the intruder said
"shut the fuck up, bitch." Defendant and
Goldware then went into the bathroom, but they
could not escape because of the bars on the
window. Defendant told [Detective] Thomas that
the intruder was 6'1", slim, twenty-nine years
old, and that he "sounded like a black male."
Defendant also stated that she believed the
intruder had hit her and Goldware with the
ironing board and stool.

 Defendant reported that after the attack,
she first called her grandmother because "when
you're in trouble, you think about talking to
your mom." Thomas asked why she felt she was
in trouble if she did nothing wrong; defendant
responded "I feel like I did something wrong."
Before her grandmother answered the phone,
defendant hung up and called 911. After
relating this story, defendant asked Thomas
if he thought she had committed the crime. He
stated, "I think you did it or someone who you
know did it," at which point defendant started
"crying hysterically."

 Defendant then told Thomas she killed
Goldware and she agreed to give a formal
statement to that effect. Defendant stated
that Littlejohn facilitated a sex-for-money
arrangement between defendant and Goldware,
and Goldware came to defendant's house. A
fight ensued when Goldware demanded sex and
refused to pay for it. Defendant stated that
during the fight, she grabbed a knife from her
kitchen and when Goldware started to choke
her, she used the knife to stab him.

 Later, however, while Thomas was
compiling defendant's statement defendant

 4 A-3386-14T2
presented a different version of the evening's
events. She said "Detective, that's not what
happened. Me and Maurice set him up to rob
him, and Maurice stabbed him." When Thomas
asked if she was sure, she replied "No, no,
that's not what happened. . . . I killed him."

 Detective Edgar Rios next interviewed
defendant in order to clarify her answers.
Defendant stated that Goldware called her and
asked her how much it would cost to have sex;
she informed him it would be $250. Goldware
propositioned defendant which defendant told
Rios, made her feel "sleazy" because she felt
that Goldware thought he could have sex with
her for free. Defendant admitted that she
would not have had sex with Goldware for free
but that she would have done it for $250; she
needed money to pay her bills. Defendant
further stated that after she had stabbed
Goldware, she called her cousin's boyfriend,
co-defendant Maurice Turner. When Turner
arrived, she gave him the knife, told him she
stabbed someone, and then directed him to
leave. When asked why she called Turner,
defendant stated, "[b]ecause I know he has a
car. And I needed someone to get rid of the
knife so I could tell you the story about
someone breaking in and beating us up."

 Upon meeting with Thomas again, defendant
told him her sister told her she better tell
Thomas the truth about what happened.
Defendant executed another Miranda waiver
form, and again related to Thomas that
Littlejohn arranged a meeting between her and
Goldware. When Goldware called her later that
evening, she informed him that she was going
home and that she would call him when she got
there. After defendant left Black Jack's, she
asked Turner for a ride home. She declined
Turner's offer to go to an after-hours bar,
stating that she "got some money coming to my
house." After hearing this, Turner told

 5 A-3386-14T2
 defendant to leave her door open so that he
 could enter and rob Goldware. . . .

 . . . .

 Defendant then told Thomas that after
 Goldware arrived, she left the door open so
 that Turner could enter. Defendant heard
 Turner as he entered the house and climbed the
 stairs, so she distracted Goldware by kissing
 him. When Turner arrived in the bedroom, he
 pushed defendant and Goldware to the floor and
 began asking "where it's at?". Turner then
 stabbed Goldware "three or four times."
 Defendant and Goldware escaped to the
 bathroom, but Turner followed them. When
 Turner finally fled the scene, defendant first
 dialed her grandmother's telephone number
 before calling 911.

 [State v. Freeman, No. A-1369-07 (App. Div.
 Sept. 10, 2010) (slip op. at 3-9) certif.
 denied, 205 N.J. 100 (2011).]

 The jury found defendant not guilty of first-degree robbery

and purposeful or knowing murder, but guilty of felony murder

and second-degree robbery as a lesser-included offense of the

first-degree charge. Counts three, five, six, and seven were

dismissed.

 The sentencing judge merged the robbery count into the

felony murder count and sentenced defendant to a term of thirty

years subject to a parole disqualifier for the full term.

 Defendant appealed, arguing that her conviction should be

reversed because the trial judge's jury charge "failed to

instruct the jury on 'divergent factual versions' of causation

 6 A-3386-14T2
for felony murder." Id. at 18. We rejected defendant's claim

that her conviction on the felony murder charge was precluded by

her acquittal of purposeful or knowing murder or first-degree

robbery because the felony murder statute "includes both first-

degree and second-degree robbery, as a predicate offense for a

conviction of felony murder." Id. at 31. The Supreme Court

denied defendant's petition for certification. 205 N.J. 100

(2011).

 Defendant filed a pro se PCR petition alleging ineffective

assistance of trial counsel for failing to advise defendant to

accept the State's pre-trial plea offer of fifteen years, and

failure to locate, interview, and call a witness at trial who

could have testified that defendant "consumed numerous alcoholic

drinks" on the day of the murder and was intoxicated.

 After PCR counsel was appointed, a brief containing

additional claims was submitted including allegations that trial

counsel was ineffective for failing to argue for dismissal of

the indictment on double jeopardy grounds after the mistrial and

for failing to discuss defendant's right to testify with her.

Defendant also claimed appellate counsel failed to argue that

the trial judge committed reversible error by denying trial

counsel's request for a jury charge on conspiracy.

 7 A-3386-14T2
 After hearing oral argument, the PCR judge ordered an

evidentiary hearing. On July 25, 2014, the judge heard the

testimony of defendant's trial counsel, Robin Lord, and

defendant. On January 5, 2015, the PCR judge entered an order

accompanied by an eleven-page written decision denying

defendant's petition.

 On appeal, defendant raises the following arguments:

 POINT I

 DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE
 OF TRIAL COUNSEL IN VIOLATION OF THE UNITED
 STATES AND NEW JERSEY CONSTITUTIONS AND THE
 LOWER COURT ERRED IN CONCLUDING OTHERWISE.

 A. TRIAL COUNSEL WAS INEFFECTIVE FOR
 NOT ARGUING FOR DISMISSAL OF THE
 INDICTMENT BASED ON DOUBLE JEOPARDY
 GROUNDS AFTER THE FIRST TRIAL ENDED
 IN A MISTRIAL.

 B. TRIAL COUNSEL WAS INEFFECTIVE
 DURING THE PLEA NEGOTIATIONS BY
 FAILING TO FULLY AND PROPERLY CONVEY
 THE PLEA OFFER TO THE DEFENDANT SO
 THAT DEFENDANT COULD MAKE A KNOWING
 AND INFORMED DECISION.

 C. TRIAL COUNSEL WAS INEFFECTIVE BY
 FAILING TO FULLY INVESTIGATE THE
 DEFENDANT'S CASE, AND THEREAFTER,
 PROFFER WITNESSES ON HER BEHALF.

 D. THE DEFENDANT WAS DEPRIVED OF HER
 RIGHT TO TESTIFY AT TRIAL ON HER OWN
 BEHALF BY VIRTUE OF TRIAL COUNSEL'S
 INEFFECTIVE PRESENTATION.

 8 A-3386-14T2
 POINT II

 THE PROSECUTOR'S REFUSAL TO OFFER A PLEA
 BARGAIN TO THE DEFENDANT PRIOR TO THE FIRST
 TRIAL WAS RETALIATORY, PUNITIVE AND DEPRIVED
 DEFENDANT OF EQUAL PROTECTION UNDER THE LAW.

 POINT III

 THE TRIAL COURT DENIED THE DEFENDANT HIS RIGHT
 TO A FAIR TRIAL BY IMPARTIAL JURY AND HIS DUE
 PROCESS RIGHT TO A FAIR TRIAL BECAUSE OF
 IMPROPER CHARGES TO THE JURY.

 POINT IV

 THE CUMULATIVE EFFECT OF THE ERRORS COMPLAINED
 OF RENDERED THE TRIAL UNFAIR.

 POINT V

 DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE
 OF APPELLATE COUNSEL ON DIRECT APPEAL.

 II.

 To prove a claim for ineffective assistance, a defendant

must show that counsel's performance was deficient, and that the

deficiency caused him or her prejudice. State v. Goodwin, 173

N.J. 583, 596 (2002) (quoting Strickland v. Washington, 466 U.S.

668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984)).

Counsel's performance qualifies as deficient only if it falls

outside "the wide range of reasonable professional assistance."

Strickland, supra, 466 U.S. at 689, 104 S. Ct. at 2065, 80 L.

Ed. 2d at 694. Any such deficiency is prejudicial, moreover,

only if there is a reasonable probability that "but for

 9 A-3386-14T2
counsel's unprofessional errors, the result of the proceeding

would have been different." Id. at 694, 104 S. Ct. at 2068, 80

L. Ed. 2d at 698. Generally, a trial counsel's strategic

choices are entitled to a considerable presumption of

competence, so long as they are made after an appropriate

investigation of relevant law and fact. State v. Harris, 181

N.J. 391, 488 (2004) (quoting Strickland, supra, 466 U.S. at

690-91, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695), cert. denied,

545 U.S. 1145, 125 S. Ct. 2973, 162 L. Ed. 2d 898 (2005).

 A PCR petitioner bears the burden of establishing his or

her right to relief pursuant to that standard by the

preponderance of the evidence. State v. Preciose, 129 N.J. 451,

459 (1992). A judge's findings in that regard after an

evidentiary hearing must be afforded deference on review so long

as they are supported by sufficient credible evidence in the

record. Harris, supra, 181 N.J. at 415. That is particularly so

to the extent those findings are colored by the court's

credibility evaluations made after an opportunity to observe

live testimony first-hand, State v. Nash, 212 N.J. 518, 540

(2013), and by its feel of the case, State v. Taccetta, 200 N.J.

183, 194 (2009). Its legal conclusions, however, are subject to

de novo review on appeal. Nash, supra, 212 N.J. at 540-41.

 10 A-3386-14T2
 A.

 Defendant first claims that her trial counsel was

ineffective for failing to move for a dismissal of her

indictment after the mistrial. She argues the State caused the

mistrial and should therefore have been barred from prosecuting

her a second time for the same offenses.

 "It is basic that a defendant is entitled to have a trial

proceed to its normal conclusion. Subsumed in this

constitutional protection is the policy to be protected from the

harassment of successive prosecutions, . . . and to receive only

one punishment for an offense." State v. Rechtschaffer, 70 N.J.

395, 404 (1976) (citing Downum v. United States, 372 U.S. 734,

736, 83 S. Ct. 1033, 1034, 10 L. Ed. 2d 100, 102-03 (1963)).

Although jeopardy attaches once the "jury is impaneled and

sworn," State v. Farmer, 48 N.J. 145, 169 (1966), cert. denied,

386 U.S. 991, 87 S. Ct. 1305, 18 L. Ed. 2d 335 (1967),

termination of a trial thereafter, but before conclusion with a

final verdict, does not invariably preclude subsequent

prosecution of a defendant for the same charges. State v. Loyal,

164 N.J. 418, 435 (2000). Unless termination was improper, "the

defendant's right to have his initial trial completed is

subordinated to the public's interest in fair trials and

 11 A-3386-14T2
reliable judgments." Ibid. (citing Wade v. Hunter, 336 U.S. 684,

689, 69 S. Ct. 834, 837, 93 L. Ed. 974, 978 (1949)).

 Whether a mistrial bars re-prosecution depends on the

circumstances of each case. Illinois v. Somerville, 410 U.S.

458, 464, 93 S. Ct. 1066, 1070, 35 L. Ed. 2d 425, 431 (1973).

Generally, subsequent retrial is constitutionally permissible so

long as there was "sufficient legal reason and manifest

necessity to terminate [the] trial," Loyal, supra, 164 N.J. at

435, or the defendant consents to the termination, United States

v. Dinitz, 424 U.S. 600, 607, 611, 96 S. Ct. 1075, 1079-81, 47

L. Ed. 2d 267, 274, 276 (1976), and provided, in either case,

that the mistrial was not brought about by "bad faith,

inexcusable neglect or inadvertence[,] or oppressive conduct on

the part of the State." Farmer, supra, 48 N.J. at 174.

Statutory protection against double jeopardy echoes the

constitutional standard in relevant respect. See N.J.S.A. 2C:1-

9(d) (delineating proper circumstances for termination,

including where made with defendant's consent or "required by a

sufficient legal reason and a manifest or absolute or overriding

necessity").

 Here, the mistrial was ordered after a detective, called by

the State, testified on cross-examination that defendant had

provided investigators with certain incriminating evidence

 12 A-3386-14T2
against Turner. After confirming that investigators obtained a

warrant for phone records for the phones of three individuals,

the detective not only identified defendant as the source of the

information, but volunteered that one of the phone numbers she

provided belonged to Turner:

 Q Who gave you these phone numbers to
 put in your affidavit to get the warrant?

 A We initially got those phone numbers
 from Karla Freeman at the police station.

 Q At the police department?

 A Yes.

 Q Karla Freeman gave all three phone
 numbers?

 A Yes. She obtained those -- she knew
 her cell phone number, she gave us her cell
 phone number. Then she retrieved the two
 numbers from her cell phone belonging to
 Maurice Turner and also the victim.

 . . . .

 She stated she had Maurice Turner's cell
 phone number, but she did not know it by heart.
 It was in her cell phone.

 After hearing these responses, Turner's counsel moved for a

mistrial pursuant to United States v. Bruton, 391 U.S. 123, 126,

88 S. Ct. 1620, 1622, 20 L. Ed. 2d 476, 479 (1968), on the

ground that there was no way for him to cross-examine defendant,

the source of the information incriminating his client. The

 13 A-3386-14T2
detective was then questioned out of the jury's presence and

acknowledged he had never interviewed defendant himself and had

no personal knowledge of the incriminating statement.

Defendant's counsel joined in the motion, and the trial judge

granted a mistrial the following day although defendant fails to

provide any record of that decision in her appellate appendix.

 The PCR judge concluded that defendant's counsel was not

ineffective for failing to request a dismissal after the

mistrial, because termination was justified by manifest

necessity, and defendant did not object to the mistrial.

 Defendant does not dispute that the mistrial here was

legally justified, the testimony which led to the mistrial was

elicited during cross-examination, the mistrial motion was

initially made by Turner's counsel, and that defendant's counsel

joined in the motion. She asserts that the State should be held

accountable for the mistake made by its own witness,

particularly in light of the extensive attention given in

pretrial practice to the exclusion of inculpatory statements

like the one that triggered the mistrial, and the State's

insistence on conducting a joint trial in spite of the potential

pitfalls. Defendant does not allege bad faith or oppressive

conduct, but argues that the State's "inexcusable neglect"

should have barred her retrial.

 14 A-3386-14T2
 We are satisfied that there was no inexcusable neglect, as

the detective unexpectedly provided inadmissible testimony in

response to a question from defendant's counsel. Dismissal of

the indictment on double jeopardy grounds was not required and

defendant's counsel cannot be deemed ineffective for failing to

make a meritless motion. State v. Worlock, 117 N.J. 596, 625

(1990).

 B.

 Defendant next argues that her trial counsel was

ineffective for failure to adequately explain to her a favorable

plea offer, asserting that, had she properly understood its

terms, she would have accepted it.

 The constitutional right of a criminal defendant to

effective assistance of counsel extends to the plea bargaining

stage. State v. Taccetta, 351 N.J. Super. 196, 200 (App. Div.),

certif. denied, 174 N.J. 544 (2002). A counsel's "gross

misadvice of sentencing exposure that prevents [a] defendant

from making a fair evaluation of a plea offer and induces him

[or her] to reject a plea agreement he [or she] otherwise would

likely have accepted constitutes remediable ineffective

assistance." Ibid. (citations omitted).

 Defendant testified at the hearing that the State made no

plea offer prior to the first trial, but offered a

 15 A-3386-14T2
recommendation of a fifteen-year term in return for her plea to

manslaughter and robbery. Defendant testified that she objected

to pleading guilty to manslaughter, as she felt she did not

"assist" Turner in killing Goldware. Defendant claimed that

Lord did not explain to her that her willing participation in

the robbery was legally sufficient to establish felony murder.

Defendant now claims that she would have accepted the plea offer

had she known that. The plea agreement also required defendant

to testify against Turner. Defendant admitted that she was

reluctant to testify against Turner because he was a gang

member, but explained she would have done it because of her son.

 Lord testified that she had sought a deal for a fifteen-

year sentence, but could not recall whether the State made such

an offer and could not find a written record of a plea offer in

her files. Lord explained that it was her practice to advise

her client as to any plea offer.

 The judge noted that defendant had expressed reluctance to

testify against Turner, and was confident she would not be held

responsible for Goldware's murder. The judge concluded that

defendant willingly rejected the plea offer; failed to

demonstrate that Lord's advice was deficient; and defendant's

claim that she did not understand the charges was insufficient

to meet the standard for establishing an ineffective assistance

 16 A-3386-14T2
claim. We find no reason to disturb the findings of the PCR

judge and find no evidence that defendant's counsel failed to

adequately convey the plea offer to defendant.

 C.

 Defendant next claims that her trial counsel was

ineffective for failing to interview two witnesses that she

suggested and to advise her of the opportunity to call character

witnesses so that she could have suggested others who might

testify on her behalf.

 At the hearing, defendant testified that Lord conveyed a

plea offer from the State after the first trial ended in a

mistrial: In return for a guilty plea to manslaughter and

robbery, she was offered a fifteen-year sentence.

 Defendant testified that she asked Lord to interview Robin

Bromley and Rotina Priester. Defendant suggested Priester could

have served as a character witness to counter what she perceived

as her portrayal at trial as a "monster" and a "horrible

person." In her affidavit, defendant claimed Bromley could have

testified that she and defendant had been drinking that day and

perhaps supported a defense of voluntary intoxication. On

cross-examination, the State confronted defendant with Bromley's

statement to police that defendant had told Bromley not to

return to her house the night of the murder. Lord had no

 17 A-3386-14T2
specific recollection of defendant recommending that she

interview these two potential witnesses.

 The PCR judge concluded that defendant had failed to

establish any prejudice from trial counsel's failure to

investigate or call either witness. The judge noted that

counsel's general disinclination to call such witnesses was a

reasonable strategic choice entitled to some deference, and

doubted, in any event, that Bromley's testimony would have been

helpful in light of her statement to the police, or that any

favorable testimony from character witnesses would have

influenced the outcome of defendant's case.

 "[W]hen a petitioner claims [her] trial attorney

inadequately investigated [her] case, [she] must assert the

facts that an investigation would have revealed, supported by

affidavits or certifications based upon the personal knowledge

of the affiant or the person making the certification." State v.

Cummings, 321 N.J. Super. 154, 170 (App. Div.) (citing R. 1:6-

6), certif. denied, 162 N.J. 199 (1999).

 We are satisfied that defendant failed to provide any

support for her claim of ineffective assistance here and we will

not second-guess her counsel's strategic decision not to call a

witnesses who could have provided damaging testimony at trial.

 18 A-3386-14T2
 D.

 Defendant next claims that she was deprived of her right to

testify at trial as her trial counsel failed to adequately

advise her of that right.

 At the evidentiary hearing, defendant could not recall

counsel ever having discussed with her the option of testifying

at trial. When asked whether she wanted to testify, she

initially replied in the affirmative, but quickly clarified, "I

did but I didn't." She continued:

 the only reason why I didn't is because the
 things that's going on right now out there
 with those streets, about snitching and
 telling. But I also was under -- I thought
 that the evidence spoke for itself. I really
 didn't feel that I was going to get convicted
 of felony murder. I really didn't feel that
 I was.

 Defendant acknowledged that she never told counsel she

wanted to testify, and that counsel never advised her against

testifying.

 Lord testified that she had no specific recollection of

what advice she provided to defendant, but her practice was to

explain "the pros and cons" of testifying at trial to her

clients. When shown a portion of the trial transcript

indicating she told the trial judge that she had spoken with

defendant about her right to testify, Lord's recollection was

 19 A-3386-14T2
refreshed that she had done so and conveyed to the trial judge

"it remains [defendant's] position she will not testify."

 A criminal defendant possesses a fundamental right to

testify on his or her own behalf at trial, a right which may be

waived "only by [the defendant's own] 'intentional

relinquishment or abandonment.'" State v. Savage, 120 N.J. 594,

628 (1990) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.

Ct. 1019, 1023, 82 L. Ed. 1461, 1466 (1938)). To inform the

defendant's decision whether to testify, counsel has a duty to

"advis[e him or her] of the benefits inherent in exercising that

right and the consequences inherent in waiving it." Id. at 631.

A failure in that regard may give rise to a claim for

ineffective assistance. Ibid.

 The trial record demonstrates that defendant was apprised

by the trial judge of her right to testify, stated that she had

no questions about it, and was permitted fifteen minutes to

discuss the matter with counsel prior to making a decision. At

the conclusion of that discussion, counsel informed the court,

and defendant confirmed, that she wished to remain silent.

 Defendant's claims that she wanted to testify but declined

because she was uninformed find no support in the record. Nor

did defendant's testimony at the hearing, where she was, at

best, ambivalent about her desire to testify, buttress her

 20 A-3386-14T2
claim. The PCR judge's conclusion that counsel was not

ineffective for failure to advise defendant of her right to

testify finds ample support in the record.

 E.

 Defendant next contends that appellate counsel's failure to

raise the prosecutor's refusal to offer a plea bargain prior to

the first trial, and to challenge the jury charge on accomplice

liability on direct appeal deprived her of effective assistance

of counsel.

 The constitutional guarantee of effective assistance of

counsel extends to a defendant's representation on a first

appeal as of right. Evitts v. Lucey, 469 U.S. 387, 396, 105 S.

Ct. 830, 836, 83 L. Ed. 2d 821, 830 (1985). Claims for

ineffective assistance of appellate counsel are evaluated

according to the same standard as those regarding trial counsel.

State v. Gaither, 396 N.J. Super. 508, 513-14 (App. Div. 2007),

certif. denied, 194 N.J. 444 (2008).

 "The decision whether to offer a plea bargain is a matter

of prosecutorial authority and discretion." State v. Gruber, 362

N.J. Super. 519, 537 (App. Div.), certif. denied, 178 N.J. 251

(2003). "[A] defendant has no legal entitlement to compel a

plea offer or a plea bargain; the decision whether to engage in

such bargaining rests with the prosecutor." State v. Williams,

 21 A-3386-14T2
277 N.J. Super. 40, 46 (1994).

 Defendant relied on a statement made by the prosecutor to a

detective at a pretrial hearing and overheard by defendant.

After defendant's counsel had demanded outstanding discovery,

the prosecutor told the detective, "if [defendant's counsel] was

going to make it hard on [the prosecutor], then [the prosecutor

was] going to make it hard on [defendant]."

 The prosecutor did not deny making the statement but

explained:

 Judge, I believe it was said with respect to
 [counsel], but it's -- the notion is that
 [counsel] has approached us for consideration
 on behalf of her client. And I just talked
 to the detective, and I said, if it's going
 to be hard for us, we're not going to have any
 consideration for her.

 Personally, Judge, I was talking to the
 lead detective, and I didn't know we were
 going to be subject to eavesdropping. If I
 caused [counsel] some concern, I'm sorry.

 Defendant's counsel then moved to have the prosecutor

removed from the case, arguing it was unacceptable for the

prosecutor to penalize defendant for requesting discovery that

should already have been provided. Counsel surmised that the

prosecutor would also "penalize" defendant by not offering her

"a lenient plea bargain." The prosecutor responded that he "had

conversations with the family of the victim" and was "not

 22 A-3386-14T2
inclined to give [defendant] a plea bargain." The judge denied

defendant's motion and the matter was not raised on direct

appeal.

 At the PCR hearing, Lord recalled what she perceived as the

prosecutor's unreasonable refusal to make a plea offer and, with

reference to the incident at the pretrial hearing, her belief

that he was simply being "vindictive" because of her discovery

request. Appellate counsel did not testify.

 The judge concluded that defendant had not demonstrated any

deficiency in appellate counsel's performance in not raising the

issue. The judge doubted counsel would have been successful if

the issue has been raised, particularly given the State's plea

offer prior to the second trial, which cut defendant's exposure

"in half." The judge found that defendant had not demonstrated

prejudice, and had not shown that further litigation of the

prosecutorial misconduct claim would have changed the outcome of

her case.

 While we do not condone the prosecutor's comment, we agree

with the PCR judge that defendant failed to demonstrate

prejudice and was ultimately offered a favorable plea agreement

which she rejected. The judge appropriately concluded that

appellate counsel was not ineffective for failing to raise this

claim of prosecutorial misconduct on appeal.

 23 A-3386-14T2
 Similarly, we find no merit to defendant's claim that

appellate counsel was ineffective for failing to challenge the

jury instructions as to accomplice liability on appeal.

 Even though defendant was never charged with conspiracy,

defense counsel requested that the trial judge instruct the jury

that defendant could not be convicted of felony murder if the

jury found she was an accomplice to the robbery predicated on

conspiracy alone. The judge declined to give the requested

charge, but agreed to give an instruction based on the model

charge for accomplice liability without reference to the word

"conspiracy."

 During closing arguments, the prosecutor remarked:

 [Turner] said after he got the money, it would
 be half and half. He was going to take the
 money, he was going to share in the proceeds.
 That is a conspiracy; she is an accomplice.
 They're going to share in the loot they were
 going to get from William Goldware.

As a result of this comment, defendant's counsel renewed her

request, but the court again denied the motion and gave the

following instruction based on the model charge:

 A person is legally accountable for the
 conduct of another person, when she is an
 accomplice of such person in the commission
 of an offense.

 Thus, a person is an accomplice of
 another person in the commission of an
 offense, if[,] with the purpose of promoting

 24 A-3386-14T2
 or facilitating the commission of the offense,
 she aids, or agrees, or attempts to aid such
 person, such other person in planning or
 committing the crime.

 Defendant argued that this charge was misleading in light

of the prosecutor's mention of "conspiracy," and could have

influenced the jury to convict defendant of felony murder based

on that inappropriate predicate offense.

 The PCR judge disagreed, noting that defendant was never

charged with conspiracy, and concluded that appellate counsel

could not have been ineffective for failing to argue that the

trial judge should have issued instructions as to an uncharged

offense. We agree.

 Defendant has not shown a likelihood that the jury was so

confused that it convicted defendant of felony murder based on a

predicate offense with which she was never charged due

exclusively to a fleeting mention of conspiracy by the

prosecutor. As defendant's challenge to the jury instruction

lacked merit, it follows that appellate counsel could not have

been ineffective for failing to raise it. See Worlock, supra,

117 N.J. at 625 ("The failure to raise unsuccessful legal

arguments does not constitute ineffective assistance of

counsel.").

 25 A-3386-14T2
 Defendant's remaining arguments lack sufficient merit to

warrant any further discussion in our opinion. R. 2:11-3(e)(2).

 Affirmed. We remand for the limited purpose of correcting

the judgment of conviction to reflect a final charge of second-

degree robbery rather than first-degree robbery.

 26 A-3386-14T2